**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| DARREN KEVIN JONES, | * | |
| | * | C.A. No. 8:15-cv-01173-GJH |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | DEMAND FOR JURY TRIAL |
| OFFICER GARY ALLEN, et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' EXPERT WITNESSES**

Plaintiff filed a Motion to Exclude the testimony of Defendants' expert witnesses, Barry Levine, Ph.D., and Emanuel Kapelsohn. The basis for exclusion of Levine is the lack of relevance of his testimony, based on his report. The basis for exclusion o Kapelsohn was his lack of qualification to provide the vast majority of the opinions expressed in his written report. Defendants, thereafter, filed a Response to Plaintiff's Motion, asserting that both experts are qualified to testify, that Levine's proffered testimony is relevant, and that Kapelsohn has considerable expertise in firearms training. Defendants fail to address the substantive issues raised in Plaintiff's Motion, and their experts should be excluded – or the testimony of those experts restricted substantially – as a matter of law.

## I.    Barry Levine, Ph.D.

In response to Plaintiff's Motion, Defendants argue in support of Dr. Levine that evidence of intoxication is relevant and admissible. [Document 43, p. 2]. Defendants cite

several cases for the proposition that "it is common knowledge that . . . alcohol . . . consumed will affect one's ability to see, to hear, and, generally, to perceive what is occurring." *Id*., at p. 5.[1] Defendants fail, however, to recognize that the cases they cite discuss **intoxicated** persons. At a minimum, the facts of each case relied upon by Defendants include some witness testimony about the person at issue which was used as evidence that the person was intoxicated. In the case at bar there is no such evidence that Plaintiff demonstrated any behavior which led any witness to believe that he was intoxicated, impaired, or otherwise drunk. Moreover, Dr. Levin never opines in his report that Plaintiff was intoxicated, or even impaired. He states only that, "Most individuals with a BAC of 0.06-0.07 g/100mL would be impaired by alcohol."

The only evidence that Dr. Levine relies upon in his report is the blood serum level of Plaintiff, taken at Washington Hospital Center. Evidence of alcohol consumption is prejudicial. *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994).[2] Evidence of a plaintiff's intoxication is relevant to the extent that it affects the care that he takes for his own safety and is therefore admissible as a circumstance to be weighed by the trier of fact in its determination of the issue of due care. *Marshall v. Osborn*, 213 Ill.App.3d 134, 140, 156 Ill.Dec. 708, 571 N.E.2d 492 (1991). Intoxication, by itself, is not sufficient, as a matter of law, to constitute the act necessary to show such causation. *Mitchell v. Montgomery County*, 88 Md.App. 542, 596 A.2d 93 (1991). Evidence of intoxication does not, as a matter of law, constitute negligence per se. *Id*., at 555. [W]hat is at issue is not intoxication itself, but intoxication as leading to some action or failure to act which is negligent. What is required, therefore, in order for evidence of intoxication to be

---

[1] If this type of information is common knowledge, one must question Defendants' need for an expert witness.
[2] Evidence of alcohol consumption was admitted in the context of a bench trial as it was determined that a trial judge has the ability to set aside irrelevant evidence.

admissible is for the proponent of the evidence to demonstrate some causal connection between the allegedly intoxicated state of the person in question and his or her conduct or behavior. *Id.*

Other courts have held that, because of the highly prejudicial nature of evidence of alcohol consumption, "actual intoxication must be established, indicating physical or mental capabilities." *Sandburg-Schiller v. Rosello*, 119 Ill.App.3d 318, 331, 74 Ill.Dec. 690, 456 N.E.2d 192 (1983); *Bielaga v. Mozdzeniak*, 328 Ill.App.3d 291, 296, 262 Ill.Dec. 523, 765 N.E.2d 1131 (2002). "Where there is no evidence of intoxication, evidence of consumption of alcohol is considered irrelevant . . ." *Sobczak v. General Motors Corp.,* 373 Ill. App. 3d 910, 312 Ill. Dec. 682, 871 N.E.2d 82, 95 (1st Dist. 2007).

Defendants have failed to establish either actual intoxication, or any evidentiary connection between Plaintiff's alleged "impairment" and any act or omission by Plaintiff in the case. In his extraordinarily brief report, Dr. Levine does not state that Plaintiff was intoxicated, or even impaired. Dr. Levine does not even point to a particular act of Plaintiff that he claims to have been influenced by alcohol-based impairment.[3] Without connecting the presence of alcohol to any activity of Plaintiff, there can be no relevance to Plaintiff's blood alcohol level on the date of the shooting. Defendants present Dr. Levine for the sole purpose of declaring to the jury that Plaintiff was "impaired by alcohol" at the time that he was shot by police. This is precisely the type of prejudice that the law seeks to eliminate. Dr. Levine's expertise will not assist the jury whatsoever in interpreting any evidence. Instead, it will be used only in a thinly veiled attempt to besmirch the character of the Plaintiff.

---

[3] Defendants' Rule 26 Expert Witness Disclosures do not set forth that Dr. Levine intends to offer any such opinion.

The case precedent recited above makes clear that any reference to Plaintiff's

consumption of alcohol, Plaintiff's blood alcohol level, or the effect of alcohol on people,

generally, is irrelevant in this case.  Dr. Levine's report does not reveal that he has even reviewed

or considered the actual events of Plaintiff's shooting, nor Plaintiff's individual actions.  He

renders no opinion that Plaintiff was impaired.  He merely read the medical report containing

Plaintiff's blood serum level and seeks to interpret that level as it applies to the general human

population.  Such expert testimony has no place in this case, and must be stricken as a matter of

law.

## II.    Emanuel Kapelsohn

Rule 702 of the Federal Rules of Evidence provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case."

The rule sets forth the standard which proffered (and challenged) expert testimony must meet to

be admissible and which the court must apply in performing its gatekeeping role in assessing

scientific evidence. *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221-23 (10th Cir.2003).  As a part of

its gatekeeping function, the court must determine whether the proposed expert is qualified to

offer an opinion on the issues involved in the particular case. *Ralston v. Smith & Nephew*

*Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001). A qualified expert possesses the necessary

knowledge, skill, experience, training or education relevant to the facts at issue. *Id*. If qualified,

the court then must determine whether the expert's opinions are reliable under the principles set

forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Defendants, here, have also responded to Plaintiff's Motion by expounding on the qualifications of Emanuel Kapelsohn. Without a doubt, Mr. Kapelsohn has extensive experience with guns, and is well qualified as an expert in firearms **training**. Plaintiff has not challenged his usefulness as an expert in this regard. Yet this case is not about how to shoot a particular gun. The issue at hand is that Kapelsohn, in his report, has expressed his determination to provide expert testimony on a variety of subject areas in which he has absolutely no expertise, no education, no training, and no experience. Plaintiff, in his Motion, set forth a list of fifteen (15) examples of opinions provided within Kapelsohn's report where the basis for the opinion is questionable, at a minimum. Defendants responded to one (1) of the questioned opinions directly.

Defendants address the flawed "draw and fire" shooting test that Kapelsohn conducted, and discount Plaintiff's concerns about its veracity. [Document 43, at p. 9]. Defendants' assertion that "there is no evidence that Allen only fired his weapon after he regained his balance" is wholly inaccurate. Defendants themselves conducted a Bullet Path Analysis which resulted in a report.[4] The findings contained in the report were that all shots fired at the vehicle were on a downward trajectory – evidence that both officers were standing upright as they fired. That notwithstanding, Defendants statement confirms that if Allen began firing while attempting to regain his balance, that factor should have been introduced into Kapelsohn's testing. Allen's draw and fire speed, at the very least, should have been tested in the context of Allen drawing

---

[4] See Exhibit A, Bullet Path Analysis

and firing his weapon as he attempted to regain his balance.  The results of a test which does not at all replicate the actual event cannot possibly be helpful to a jury.  Kapelsohn's results are irrelevant – certainly as they pertain to Allen's activity.   The resulting opinion regarding the movement of the Barksdale vehicle as it relates to Allen's position is invalid, based on testing that is fundamentally flawed, and contrived in an attempt to justify Defendants' unlawful actions.

With regard to Kapelsohn's qualifications relevant to this litigation, Defendants argue in their Response that Kapelsohn "is certified in shooting scene reconstruction and is a certified force science analyst." [Document 43, at p. 6].  The only reference to shooting scene reconstruction in Kapelsohn's CV is the entry "Shooting Scene Reconstruction Course Eugene, OR Police Department (2008) Mike Haag Instructor. Certificate."[5]  On its own – and without more - this "certification" calls into question Kapelsohn's asserted expertise.  But taken together with other references from the 55-page CV, skepticism must give way to doubt.  Kapelsohn notes that he is a member of both the Pennsylvania Sheriff's Association[6], and the Pennsylvania Chiefs of Police Association[7].  The clear intent of listing these "Professional Associations & Memberships" is to connote affiliation with police organizations.  These are simply two examples, however, of organizations to whom Kapelsohn simply paid a fee for membership.[8]

Regarding Kapelsohn's "certification" as a force science analyst", Defendants provide no definition of what a force science analyst does, or what education or training comprise the certification.  The only reference to such a certification in Kapelsohn's CV states, "Force Science

---

[5] No information regarding this course is available on the website of the Eugene Police Department.
[6] See Document 39-2, at p. 16.
[7] *Id*.
[8] See Exhibit B, membership information for Pennsylvania Sheriff's Association, indicating Business memberships are available for $100.  See also Exhibit C, membership information for Pennsylvania Chiefs of Police Association, indicating Associate Membership is "open to those persons, who by occupation or personal inclination, share a mutuality of interests with the Association and its membership and wish to support the activities, programs and services of the Association; memberships range drom $25 - $150 annually.

Certification Course, Milwaukee, County Sheriff's Office Milwaukee, WI, Force Science Institute. 2009. Certificate."[9]  Per the website of the Force Science Institute[10], "[t]his designation attests that the holder has been trained to recognize and articulate important psychological, biological, and physiological factors that can influence human behavior and memory in force encounters and pursuit situations."[11]  Certification follows 3 ½ **days** of training, at which time a written exam is administered. *Id*.

With the majority of witnesses accepted as experts, the court can look to their education and/or training with a reasonable degree of confidence in an academic degree awarded after years of matriculation, or a certification from a reputable certifying body.  Aside from his training as a lawyer, neither is present with Kapelsohn.  The Force Science Institute is not accredited by any mainstream governing body in the realm of higher education.  Neither is it recognized or accredited by any mainstream law enforcement entities.  Much like Kapelsohn's CV, the Force Science Institute is a falsity.  It is made to look legitimate, but falls well short of the legal standard for what qualifies as legitimate science.  Kapelsohn's few days of training with the Force Science Institute are all that he can rely upon in terms of his knowledge, skill, education, training, or experience.  Defendants argue that Kapelsohn "has accompanied sworn police officers and performed law enforcement activities extensively."  They provide absolutely

---

[9] See Document 39-2, at p.

[10] Defendants, in their Response, defend Kapelsohn's mentor (and the founder of the Force Science Institute) William Lewinsky, Ph.D.  [Document 43, pp. 7-8].  The cases cited in support of Dr. Lewinsky are telling.  In *Humphrey v. Leatherman*, 2005 WL 6003555 (N.D. Okla.), Dr. Lewinski was permitted to testify specifically because the plaintiff failed to file a document the court requested, which was to contain the opinions that plaintiff wanted excluded.  *In Davis v. City of Chicago*, 8 N.E. 3d 120 (Ill.App. 2014), the court did not analyze the issue of Lewinsky's qualification, although it was an issue raised in plaintiff's motion for new trial.  "Dr. Lewinski is a behavioral scientist with a B.A. in psychology and sociology, a master of science degree in counseling, and a Ph.D. in police psychology. He conducts research in the biomechanics of lethal force encounters (subject and officer movement in lethal force encounters) and studies "the action of rotation motion"-both the range of motion movement and the timing of the movement." *Humphrey*, at 2.  Kapelsohn attempts to testify as an expert on the same subject areas as Lewinsky, although the educational backgrounds of the two are completely dissimilar.

[11] See Exhibit D, Course Information from Force Science Institute Ltd.

no detail, however, regarding the nature and extent of these "law enforcement activities." Defendants further claim this should be sufficient to allow Kapelsohn to opine as an expert on the behavioral sciences, human reaction time, human performance, etc.  This background is absolutely insufficient in light of the standard established in *Daubert*.  Moreover, it portends a slippery slope where the ability to simply read and regurgitate the knowledge or writings of others becomes sufficient to qualify a person as an expert witness.

Plaintiff specifically questioned Kapelsohn's qualification to testify regarding Use of Force.  In support, Defendants have offered the vague assertion that, "Mr. Kapelsohn's opinions will aid a jury about the many factors a reasonable officer must consider when determining whether to use force and the degree of force to use."  A close inspection of the CV reveals that Kapelsohn has little to no substantive training in the Use of Force.  He has, admittedly, taught several courses on the matter and has been invited to train at several police agencies.  This Court should not rely on these misguided invitations.  By example, a lawyer, also claiming to be a naturopathic healer, untrained in traditional medicine, may develop a resumé full of appointments to train in his art.  Yet he would never be recognized as an expert by the court in a medical malpractice case if he did not have the requisite education, training and experience from accredited institutions.  Likewise, use of force is not a novel area of expertise in the realm of civil rights litigation.  There are hundreds of programs at institutions of higher learning nationwide which focus on police use of force.  Moreover, there are thousands of police academies nationwide which train their officers in use of force.  And thousands more law enforcement jobs where police experts typically acquire actual experience in the use of force. Emanuel Kapelsohn has not attended a single college or graduate level course on use of force. Neither has he attended a police academy of any kind.  Neither has he actually worked as a

8

police officer.  He is attempting to shortcut his way to certification as an expert.  The Plaintiff in this case is entitled to the protection of the law.  This Court should be troubled that Defendants are seeking to introduce technical testimony that is not based upon knowledge, education, skill, or experience, and which would improperly influence a jury.

## CONCLUSION

For all of the foregoing reasons, Barry Levine, Ph.D., and Emanuel Kapelsohn should be excluded from this case pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, and Rules 702 and 703 of the Federal Rules of Evidence.

Dated:  June 27, 2016

/s/ **Stephen P. Norman, Esq.**
Stephen P. Norman, Esq. Bar No.: 29202
THE NORMAN LAW FIRM
30838 Vines Creek Rd., Unit 3
Dagsboro, Delaware 19939
Tel: 302-537-3788
Facsimile: 302-258-0705
Snorman@TheNormanLawFirm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day June, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

Dated:  June 27, 2016                          /s/ Stephen P. Norman, Esq.
                                               Stephen P. Norman, Esq. Bar No.: 29202
                                               THE NORMAN LAW FIRM
                                               30838 Vines Creek Rd., Unit 3
                                               Dagsboro, Delaware 19939
                                               Tel: 302-537-3788
                                               Facsimile: 302-258-0705
                                               Snorman@TheNormanLawFirm.com
                                               *Attorneys for Plaintiff*