IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                        *

DARREN KEVIN JONES,
                                        *
        Plaintiff,
                                        *
        v.                                        Civil Action No. PX-15-1173
                                        *

GARY ALLEN *et al.*,                    *

        Defendants.

                              ******

## MEMORANDUM OPINION

Plaintiff, Kevin Jones, brings this 42 U.S.C. § 1983 action against Prince George's

County Police Officers Gary Allen, Gregory Powell, and Joseph Bunce, claiming that he was

unjustifiably shot by Officers Allen and Powell as well as wrongfully arrested and detained.

Pending before this Court is a Motion for Summary Judgement by Defendants Gary Allen,

Joseph Bunce, Gregory Powell (collectively, "Defendants"). ECF No. 40. The issues are fully

briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary.

For the reasons stated below, Defendants' joint motion is DENIED IN PART and GRANTED IN

PART.

## I.    BACKGROUND[1]

On April 5, 2014, Plaintiff Darren Jones ("Plaintiff" or "Jones") asked an acquaintance of

his, Carlos Barksdale ("Barksdale"), if he could borrow his dirt bike. Deposition of Darren Jones,

ECF No. 42-1 at 60. Barksdale obliged and the two agreed to meet at Plaintiff's shop. From the

shop, Barksdale and the Plaintiff drove in separate cars to an M&T Bank branch close to

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to the Plaintiff, the
nonmoving party.

1

Barksdale's old residence, then occupied by Barksdale's ex-girlfriend, Andrea Battle ("Battle"). Barksdale had left his dirt bike in the Battle's garage. ECF No. 42-1 at 63. The Plaintiff jumped into Barksdale's car at the M&T Bank branch and the two proceeded to Battle's house. On the way, Barksdale told Plaintiff that the dirt bike would need gas so they arrived Battle's home, retrieved the gas can from the garage, and left to fill up the can at a local gas station. ECF No. 42-1 at 64–66, 68–70.

The two immediately returned to Battle's home to refuel and retrieve the dirt bike. Barksdale backed into the driveway at an angle so that the front of the car was pointed more towards the right side of the driveway if facing the street. Plaintiff and Barksdale got out of the car and walked into the garage. ECF No. 42-1 at 70, 78. Barksdale picked up some of his clothes lying on the floor of the garage and placed them in the trunk of his car. ECF No. 42-1 at 71. At the same time, Plaintiff finished putting gas in the dirt bike and tried to start it, but the battery was dead. ECF No. 42-1 at 74. He then heard Barksdale arguing with a woman in front of the house who turned out to be Battle. ECF No. 42-1 at 71–75. Plaintiff was still in the garage with his back facing outside when he heard Barksdale say "come on, Kevin. Let's go," indicating it was time to leave. ECF No. 42-1 at 76.

At this time, Battle called Prince George's County's emergency number and reported that her ex-boyfriend Barksdale was kicking in the garage door and his Honda was parked in her driveway. Deposition of Andrea Battle, ECF No. 42-3 at 5; Deposition of Gary Allen, ECF No. 50-1 at 14; Certified Audio Recording: Public Safety Communications Call Initiated by Andrea Battle (April 5, 2014), ECF No. 40-1 [hereinafter "Public Safety Recording"]. Officer Gary Allen ("Allen") and Officer Gregory Powell ("Powell") (collectively, "the Officers") responded to Battle's residence in Allen's marked police cruiser. ECF No. 42-1 at 77; ECF No. 50-1 at 14-

15. While the dispatcher told the Officers that Barksdale had a history of carrying a handgun and prior assault charges, ECF No. 50-1 at 14, the Court's record is unclear as to the source of this information.

At this juncture, the eye-witness accounts of events diverge significantly. According to the Plaintiff, when he left the garage, he realized Barksdale was already in the car. ECF No. 42-1 at 77. While walking to the passenger side of the Honda, Plaintiff noticed a Prince George's County police cruiser, still moving, and "passing by the driveway" of Battle's residence and where Plaintiff was located. ECF No. 42-1 at 78–79, 83. The police cruiser came to a stop past the house, ECF No. 42-1 at 78; ECF No. 50-1 at 11, its lights and sirens turned on. ECF No. 50-1 at 13. As Plaintiff approached the passenger side of the Honda, he saw Allen exiting the police cruiser on the passenger side "with his weapon drawn." ECF No. 42-1 at 78; ECF No. 50-1 (Allen was a passenger in the police cruiser). Plaintiff opened the Honda passenger door and as he was getting in the car, saw Allen at the rear of his police vehicle. ECF No. 42-1 at 78. Powell stood to the left of Allen, further away from the Honda. ECF No. 42-3 at 6.

Allen then "pointed his weapon" at the Plaintiff and said "freeze . . . if you move I'll shoot." ECF No. 42-1 at 79. The Officers were attempting to detain both men because the officers regarded *both* as suspected burglars. Transcript of *Maryland v. Barksdale*, 14-0716A, ECF No. 42-2 at 45 [hereinafter, Barksdale Criminal Trial]; ECF No. 50-2 at 37; ECF No. 50-1 at 17 (Allen was giving instructions to both Barksdale and Jones to "freeze, stop" and "stop, stay right there."). Allen did not know which suspect was Barksdale. ECF No. 50-1 at 19 ("At the time I didn't know who it was, but I did see a black male in the driver's seat . . . [and Powell] was also saying stop. He was basically telling them to freeze, don't move."). Plaintiff responded to Allen, "if I move my hand you're going to shoot me." ECF No. 42-1 at 110. Allen also said

"don't move the vehicle." ECF No. 42-1 at 89. Plaintiff initially froze with the passenger door open, but Barksdale kept telling him to get in the car. ECF No. 42-1 at 80. The Honda started to drift "not very fast" down the driveway to the right (ECF No. 42-1 at 82, 86); so, the Plaintiff continuously moved with the Honda so that his body would not be squeezed between a box or mailbox "on the side of the street in the grass" and the door. ECF No. 42-1 at 81.

According to Plaintiff and other witnesses, Defendants Allen and Powell began shooting at the Honda as it drove away from the officers. ECF No. 42-3 at 9; ECF No. 50-1 at 24; ECF No. 50-2 at 19. The Plaintiff heard a gunshot before he got into the Honda, ECF No. 42-1 at 110, but he did not recall whether he was struck while he was standing outside of the vehicle. ECF No. 42-1 at 81–82. Before the shots were fired, the Plaintiff did not hear the car's engine revving. ECF No. 42-1 at 87.

Barksdale testified that he drove to the right where the passenger side tires went "through the grass and over a curb" in his attempts to avoid being shot. ECF No. 42-1 at 99; *Accord* ECF No. 42-1 at 95, 104. Plaintiff similarly recalls that the Honda drove away from the Officers, with shots continuing as the Honda pulled on to Temple Hills Road and "way away from the police cruiser." ECF No. 42-1 at 92, 95–96. Plaintiff noted that the shots continued from a "police officer still standing in the street firing." ECF No. 42-1 at 96–97. The Plaintiff could not identify which officer he saw, but according to the Plaintiff, the officer fired at least one shot, shattering the back window. ECF No. 42-1 at 98.

Powell admitted that he shot at the Honda as the vehicle was leaving and he was likely the only officer shooting from behind the car. Barksdale Criminal Trial, ECF No. 42-2 at 37–38. Physical evidence also corroborates that some of the shots were fired while the officers were directly behind the Honda as it drove away. Corporal Jeremy Webb testified as an expert at

4

Barksdale's criminal trial regarding the trajectory of the four bullets that struck the vehicle, noted that although one bullet entered the driver's side of the vehicle (Barksdale Criminal Trial, ECF No. 42-2 at 69), at least two others entered from behind the vehicle. Barksdale Criminal Trial, ECF No. 42-2 at 60–69. One of the two bullets struck the open trunk and shattered the back windowpane. The other struck the driver's side rear vent window. Barksdale Criminal Trial, ECF No. 42-2 at 62, 65, 67–68.

According to the Plaintiff, Barksdale, and Battle, the Honda at all times drove away from the officers and never made contact with an officer or any other object. ECF No. 42-1 at 93, 100; ECF No. 42-3 at 17; Barksdale Criminal Trial, ECF No. 42-2 at 102. In fact, the Plaintiff testified that neither officer was ever around the Honda. ECF No. 42-1 at 100, and that Plaintiff had jumped in the passenger seat of the Honda, Allen was to the left of the Honda close to the rear of his cruiser. ECF No. 42-1 at 100. Battle also testified to having seen the officers in front of the Honda about five to ten feet away when the shooting occurred and that while Allen fell at some point, Battle did not see the Honda hit him. ECF No. 42-3 at 21.

Defendant Officers recount these events differently. They testified that as the Honda drove out of the driveway, the vehicle struck Allen, Deposition of Gregory Powell, ECF No. 50-2 at 17; ECF No. 50-1 at 91. According to Allen, he fired after the vehicle hit him "when the vehicle was directly beside" him, ECF No. 50-1 at 26, because Allen feared he "could have got [sic] ran over by the rear of the vehicle." ECF No. 50-1 at 49. At Barksdale's criminal trial (*Maryland v. Barksdale*, 14-0716A), Powell also testified that he was about ten feet away from the vehicle when he saw the driver's side front of the vehicle hit Allen (Barksdale Criminal Trial, ECF No. 42-2 at 18), prompting him to shoot at the vehicle. Barksdale Criminal Trial, ECF No.

42-2 at 34; *see also* Barksdale Criminal Trial, ECF No. 42-2 at 28 ("My reason for firing is

because he [Allen] got hit by the car. He [Barksdale] used the car as a weapon.").

Notably, however, Powell now doubles back on his own rationale for shooting at the

vehicle. Powell confirmed that he shot at the vehicle as he stood directly behind it and as the car

drove *away*. ECF No. 50-2 at 20. But Powell testified at Barksdale's criminal trial that Allen

possibly being dragged by the car was "**not** the reason why I shot." Barksdale Criminal Trial,

ECF No. 42-2 at 34. Rather, Powell confirmed that the reason why he shot at the vehicle was

because it had already hit Allen. *Id. But cf.* ECF No. 50-2 at 19 (Powell deposition testimony

where he claimed to have shot at car because he believed Allen was being dragged).

The Defendants do not dispute that Plaintiff was shot in the leg, left hand, and abdomen,

with one bullet piercing his liver. He also sustained broken ribs. ECF No. 42-1 at 116. Plaintiff

first realized that he had been shot while he was still in the car because he was having trouble

breathing. ECF No. 42-1 at 104. Immediately after being shot, Plaintiff told Barksdale to get to

the hospital. ECF No. 42-1 at 104. Barksdale instead drove the Plaintiff to the M&T Bank where

Barksdale fled the scene on foot. ECF No. 42-1 at 104, 109.

Plaintiff, by contrast, could not even walk because of the gunshot wound to his leg. ECF

No. 42-1 at 108. Plaintiff "already couldn't breathe" and "didn't know how much time [he] had"

so he implored a friend to drive him directly to the hospital instead of waiting on an ambulance.

ECF No. 42-1 at 109. The Officers followed the Honda as it departed Battle's house (Public

Safety Recording, CD 1, Track 4, 3:40, ECF No. 40-1). The Officers were advised of the

location of Plaintiff and Barksdale at the M&T Bank where the two split up. *Id*. Police officers,

knowing that Plaintiff was shot, proceeded directly to the Southern Maryland Hospital and

radioed ahead, ensuring hospital security detained Plaintiff upon his arrival. *Id.* There, Plaintiff

arrived at the hospital, and a police officer went directly to the Plaintiff's operating room. *Id.*
And the Plaintiff was placed under arrest. ECF No. 42-1 at 109.

Defendants Allen and Powell spoke with their supervisor, Sergeant Mark Jensen
("Sergeant Jensen"), shortly after the incident. Deposition of Mark Jensen, ECF No. 42-6 at 9–
10, 23. Both officers told Sergeant Jensen that Allen had been struck by Barksdale's vehicle.
ECF No. 42-6 at 9–10. Based on that information, Sergeant Jensen drafted an incident report
stating that Barksdale drove directly at the officers (ECF No. 42-6 at 27–31) "in an effort to
assault them" and struck an officer. ECF No. 42-6 at 34–35. Sergeant Jensen testified that he did
not recall whether the officers communicated to him that they had been in fear for their life or
whether he just used the standard "jargon" for officer-involved shootings. ECF No. 42-6 at 35–
36.

Defendant Sergeant Joseph Bunce ("Bunce"), a detective in the Criminal Investigation
Division, Homicide Section, was assigned to investigate the breaking and entering of Battle's
garage. Deposition of Joseph Bunce, ECF No. 42-7 at 18. Bunce spoke only with Powell at the
scene of the incident about how the incident "unfolded up until the time the shots were fired."
ECF No. 42-7 at 27–28; 30–31; *see also* ECF No. 42-7 at 21, 34, 47. Powell told Bunce that
Barksdale "accelerated very quickly towards the officers," striking Allen. ECF No. 42-7 at 34.
Powell also told Bunce that both the officers "were in fear for their lives" as a result of
Barksdale's misconduct. ECF No. 42-7 at 35. Bunce also spoke to other police officers who had
interviewed Battle. ECF No. 42-7 at 38–41, 44–47; *see* Statement of Battle, ECF No. 40-7.

Based upon the information Bunce received from Battle, his own on-scene investigation,
his interview of Defendant Powell, and conversations with other officers who interviewed Battle
(ECF No. 42-7 at 33, 36, 38–39), Bunce submitted an Application for Statement of Charges for

two counts of burglary to be lodged against Plaintiff. Application for Statement of Charges, ECF No. 40-8; ECF No. 42-7 at 48. Bunce accurately noted in the Application that Barksdale was the driver, and thus implicitly made clear that only Barksdale could be responsible for allegedly accelerating towards the officers and striking the police officer. ECF No. 40-8 at 2. By contrast, Bunce requested only burglary charges against Plaintiff.

The Prince George's County District Court Commissioner, however, unilaterally added first and second degree assault charges against Plaintiff . ECF No. 42-7 at 48–51, 55; *compare* Statement of Charges, ECF No. 42-4 *with* Application for Statement of Charges, ECF No. 40-8. Statement of Charges, ECF No. 42-4.When Bunce realized that Jones was also charged with assaulting the officers, he contacted the state's attorney within days to urge dismissal of the additional charges. ECF No. 40-8 at 48-55. Ultimately, all charges against Plaintiff were *nolle prossed*. ECF No. 42-8.

Based on the foregoing events, the Plaintiff filed his Complaint alleging (1) malicious prosecution under 42 U.S.C. § 1983 against all Defendants; (2) excessive force under 42 U.S.C. § 1983 against Powell and Allen; (3) battery under Maryland law against Allen and Powell; (4) wanton negligence under Maryland law against Allen and Powell; and (5) malicious prosecution and excessive force in violation of Article 24 and 26 of the Maryland Declaration of Rights against all Defendants.[2] ECF No. 1 at 4–7.

Defendants have moved for summary judgment on all claims. ECF No. 40.

## II.    STANDARD OF REVIEW

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a);

[2] Article 24 provides substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures. Md. Const., Dec. of Rights arts. 24, 26.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "Where the determination of what actually happened depends exclusively on an assessment of the credibility of the respective witnesses, this assessment is a disputed issue of fact and, therefore, cannot be resolved on summary judgment." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 801 (D. Md. 2001) (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir.1992)); *accord Solis*, 153 F. Supp. 2d at 799 ("The court must 'draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence.'") (quoting *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (citations omitted)).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

### III.    ANALYSIS

To state a claim under 42 U.S.C. § 1983, Plaintiff must establish (1) that he was "deprived of a right secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *accord Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009). No party disputes the existence of the second element—all Defendants are "state actors" for purposes of § 1983. Thus, the Court will focus on the alleged deprivation of Plaintiff's rights.

### A.    Plaintiff's Claims of Excessive Force (Counts II and V)

Officers Allen and Powell assert that Plaintiff's § 1983 excessive force claims must be dismissed because the Plaintiff was not seized within the meaning of the Fourth Amendment because Officers Allen and Powell did not intend to shoot Plaintiff. Alternatively, Defendants maintain that even if Plaintiff was seized, the Defendants' shooting at the vehicle was objectively reasonable. Finally even if the officers' actions were unreasonable, they are qualifiedly immune because the law was not clearly established "that firing into an occupied car to stop a fleeing person was unreasonable." ECF No. 40 at 15. Plaintiff, by contrast, contends that he was the intended target of the Officers' force and the use of gunfire was unreasonable because there was no threat to the Officers' safety.

#### 1.  *Seizure*

"We have long understood that the Fourth Amendment's protection against unreasonable seizures includes seizure of the person." *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (citing *Henry v. United States*, 361 U.S. 98, 100 (1959)) (quotation marks omitted). This Court must first analyze whether the Plaintiff was seized within the meaning of the Fourth Amendment.

Defendants Allen and Powell argue that because Plaintiff was an innocent bystander struck by errant bullets that were meant to stop Barksdale, Plaintiff was never seized for Fourth Amendment purposes. ECF No. 40 at 2, 6–11 (citing *Rucker v. Harford County,* 946 F.2d 278, 281 (4th Cir.1991) (explaining that *Brower v. Cty. of Inyo*, 489 U.S. 593 (1989) "does not mean . . . that a seizure occurs just so long as the act of restraint itself is intended . . . though it restrains one not intended to be restrained")). This Court is not persuaded.

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. Accordingly, the Plaintiff must first establish that he has been seized within the meaning of the Fourth Amendment by means of excessive force. *Schultz v. Braga*, 455 F.3d 470, 480 (4th Cir. 2006). Although not every citizen police encounter constitutes a seizure, where "there is governmental termination of freedom of movement through means intentionally applied," the contact constitutes a seizure. *Id.* at 481 (quoting *Brower*, 489 U.S. at 597). Thus, where sufficient evidence demonstrates that (a) the Officers intended to detain Plaintiff and (b) the Plaintiff was "stopped by the very instrumentality set in motion or put in place in order to achieve that result," Plaintiff has been seized sufficient to trigger Fourth Amendment protections. *Id.* (quoting *Brower*, 489 U.S. at 599).

Here, Plaintiff has satisfied this burden. First, the evidence is plain that the Officers intended to stop Plaintiff. The Officers testified that Plaintiff was not merely an innocent bystander but rather a suspected burglar whom the Officers were dispatched to investigate. Barksdale Criminal Trial, ECF No. 42-2 at 45; ECF No. 50-1 at 17, 19. Further underscoring the Officers' intent to stop Plaintiff were their commands to him as he was getting into the Honda. Defendant Allen yelled to him "stop!" and "freeze!" while drawing down his weapon. ECF No. 42-1 at 79; ECF No. 50-1 at 17, 19; *see also* ECF No. 50-2 at 37.

Additionally, both Officers shot at the moving vehicle with the purpose of stopping it. As a matter of law, the detention of the vehicle renders all persons in the vehicle detained. *United States v. Soriano-Jarquin*, 492 F.3d 495, 499-500 (4th Cir. 2007) ("[A] passenger in a vehicle stopped by the police is seized by the stop within the meaning of the Fourth Amendment.") (citing *Brendlin v. California*, 551 U.S. 249 (2007)); 1 W. Ringel, *Searches & Seizures, Arrests and Confessions* § 11:20 (2d ed. 2016) ("[A] law enforcement officer's stop of an automobile results in a seizure of both the driver and the passenger").

That the Officers claimed to have aimed only at the driver does not negate their intent to stop Plaintiff too. Indeed, the only way the Officers could have stopped Plaintiff as a passenger in the moving vehicle was to disable the only person in control of the car—the driver. Thus, a reasonable jury could find that Defendant Officers intended to stop Plaintiff.

With respect to the second prong, Plaintiff has generated sufficient evidence that he was stopped by the very force intended to detain him in the first instance. *See Schultz*, 455 F.3d at 482 (seizure occurs where plaintiff is "a desired target *and* each was in fact stopped or seized by the bullet intentionally fired by the officer.") (quoting favorably *Vaughan. v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003)). In this regard, *Vaughan v. Cox* is particularly instructive. There, the plaintiff was a passenger in a vehicle fleeing the police. Sufficient evidence demonstrated that the defendant officers shot at the vehicle as it was getting away, with several bullets striking the plaintiff passenger and physically debilitating him. The vehicle only came to a stop when it encountered a roadblock. *Vaughan*, 343 F.3d at 1326. As in this case, the defendants argued that no seizure occurred because defendants were not shooting at the passenger, and thus plaintiff could not demonstrate he was seized by "means *intentionally* applied." *Vaughan*, 343 F.3d at 1328. The District Court in *Vaughan* agreed and granted summary judgment on this ground. *Id.*

On appeal, an *en banc* Court reversed, noting that "the Supreme Court has cautioned against a too finely drawn reading of 'means intentionally applied.'" *Id.* at 1328-29 (citing and quoting *Brower*, 489 U.S. at 598). The Court reasoned that "it is not necessary for the means by which a suspect is seized to conform exactly to the means intended by the officer; otherwise courts could be compelled to conclude that 'one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg.'" *Id.* (quoting *Brower*, 489 U.S. at 598-99). Because Vaughan, the passenger, was shot and debilitated by a bullet that was meant to stop him (by stopping the driver and thus the vehicle), "he was subjected to a Fourth Amendment seizure." *Id.*

The facts here compel the same result. Plaintiff was a suspect whom Defendant Officers intended to detain. To effectuate that detention, Defendant Officers shot at the fleeing Honda, with the lion's share of the bullets hitting Plaintiff. Like *Vaughan*, the Plaintiff here was incapacitated from the shots; he was unable to walk and implored others to get him to the nearest hospital. Defendant Officers followed the Honda as it left the house, and other officers knowing that Plaintiff was headed to the hospital, radioed ahead to secure Plaintiff's detention and arrest. Public Safety Recording, CD 1, Track 4, 3:40-18:00, ECF No. 40-1. That the Officers may have intended the bullets to hit only the driver is of little significance because sufficient evidence exists for a reasonable jury to conclude that the Officers intended to stop Plaintiff, and intentionally applied force—shooting at the car—to effectuate that detention. The Court will thus turn to the merits of Plaintiff's Fourth Amendment claim and the Defendants' qualified immunity defense.

2.   *Qualified Immunity*

Having concluded Plaintiff was seized, the Court must now conduct a two-part inquiry to determine whether summary judgment should be granted because the facts in the light most favorable to the Plaintiff nonetheless support the defense of qualified immunity. First, the Court considers whether the officer's conduct violated a constitutional right. If so, then secondly "whether the right asserted was clearly established at the time of the events at issue." *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 626-27 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)); *accord Graham v. Gagnon*, No. 15-1521, 2016 WL 4011156, at *4 (4th Cir. July 27, 2016). The "answer to both [ ] questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)) (ellipses in original).  This is because qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir.2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Saucier*, 533 U.S. at 201; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Importantly, disputes of material fact may preclude a finding by the Court about whether qualified immunity applies, and instead convert the inquiry into a question for the trier of fact. *Alexia Burno-Whalen v. State of Maryland*, No. GJH-15-564, 2016 WL 1259556, at *5 (D. Md. Mar. 28, 2016) (citing *Shoemaker v. Smith*, 725 A.2d 549, 561 (Md. 1999)).

As to the first inquiry, the Court concludes that genuine issues of material fact preclude summary judgment as to whether Defendant Officers acted reasonably in firing at the fleeing vehicle. In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court made clear that an officer

14

may use deadly force to prevent the escape of a fleeing non-violent felony suspect only where the officer has probable cause to believe the suspect poses an immediate threat of serious harm to police officers or others. *Garner*, 471 U.S. at 3; *see also Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005) (officer may use deadly force only when has "probable cause to believe that . . . [an] oncoming vehicle posed an immediate threat of serious physical harm.").

Objective reasonableness is the touchstone of a Fourth Amendment excessive force analysis, namely, whether the officer knew or should have known that a particular seizure qualified as excessive without regard to his underlying intent or motivation. *See Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); *Valladares v. Cordero*, 552 F.3d 384, 388-89 (4th Cir. 2009); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989). Importantly, where "force [is] justified at the beginning of an encounter," that same force may not be justified "even seconds later if the justification for the initial force has been eliminated." *Waterman*, 393 F.3d 471 at 481.

Whether the officer reasonably should have known that his conduct violated plaintiff's rights must be based on the information reasonably available to him, and considering "any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992) (citation omitted). Additionally, inasmuch as "'police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." *Waterman*, 393 F.3d at 476-77 (quoting *Graham*, 490 U.S. at 397) (internal citation omitted).

Where "an officer attempts to justify his use of deadly force against the driver of an oncoming vehicle by claiming that he was trying to prevent the vehicle from running someone over, the position of the person relative to the path of the vehicle is important." *Waterman*, 393 F.3d at 479 (but finding that the recklessness or aggressiveness could provide the officers reason to believe the driver could turn toward officers not yet in his direct path) (citing *Hernandez v. Jarman*, 340 F.3d 617, 620-21, 623-24 (8th Cir. 2003)); *Abraham v. Raso*, 183 F.3d 279, 293-94 (3d Cir.1999); *Acosta v. City & County of San Francisco*, 83 F.3d 1143, 1146-47 (9th Cir.1996); *Fraire v. City of Arlington,* 957 F.2d 1268, 1274-76 (5th Cir. 1992)).

Viewing the facts in the light most favorable to the Plaintiff Jones and from the perspective of a reasonable officer, the Court cannot say that Officers Allen and Powell's use of force was objectively reasonable as a matter of law. With regards to the initial shots fired at the vehicle as it pulled out of the driveway, the evidence implicates multiple material disputed facts. Although the Defendant Officers have testified that the Honda hit Allen, and was for some of the time headed in their direction, other witnesses and Plaintiff testify to the contrary. If the testimony of Plaintiff and other eye witnesses are credited over the officers, a reasonable jury could find that Allen was never struck by the Honda; that when the initial shots were fired Allen was standing near the trunk of his police car; and that the Honda drifted out of the driveway and away from the officers at all times.

Additionally, a reasonable jury could view Powell's own words as an admission to firing as the car drove away out of retribution, and not because he feared for his own safety or the safety of others. Barksdale Criminal Trial, ECF No. 42-2 at 34 (Allen being dragged by the car was "**not** the reason why I [Powell] shot"; and answering "Yes" to the question "The reason you shot is because he [Barksdale] hit Allen?" Accordingly, a reasonable factfinder could find that

the moving vehicle never posed a threat of death or serious injury and this factual dispute must be reserved for trial. *Walters v. Prince George's Cty.*, No. CIV.A. AW-08-711, 2010 WL 2858442, at *9 (D. Md. July 19, 2010) ("If there exists 'a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred,' the factual dispute must be reserved for trial.") (quoting *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2003)); s*ee also Solis*, 153 F. Supp. 2d at 801 (D. Md. 2001) ("Where the determination of what actually happened depends exclusively on an assessment of the credibility of the respective witnesses, this assessment is a disputed issue of fact and, therefore, cannot be resolved on summary judgment.") (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)).

Furthermore, during the rapidly evolving series of events, it is undisputed that at least some of the shots were fired as the Honda drove away from the scene. ECF No. 42-1 at 92, 95–96; ECF No. 50-1 at 24–27, 49; ECF No. 50-2 at 21. Defendant Powell testified that he continued to shoot at the vehicle as it was driving away not because the vehicle posed an ongoing threat, but because it had hit his partner shortly before. Barksdale Criminal Trial, ECF No. 42-2 at 28, 34. Finally neither party points to any evidence that the Honda drove away in a manner such that it posed a danger to anyone else. Thus, taking the facts in the light most favorable to the Plaintiff, a reasonable jury could find that Defendant Officers lacked probable cause to believe that Barksdale and Plaintiff posed any threat as they drove away from the officers. Undoubtedly, the Court is loathe to second guess police officers' split second decisions made in the line of duty. *Waterman*, 393 F.3d at 476. Nonetheless, it is constrained to deny summary judgment where the facts viewed in the light most favorable to Plaintiff demonstrate the officers' use of excessive force to detain Plaintiff.

The remaining question, then, is whether the officers violation of Plaintiff's right to be free from excessive force in this manner was clearly established, "meaning that 'a reasonable official would understand that what he is doing violates the right in question.'" *Waterman*, 393 F.3d at 476 (quoting *Saucier*, 533 U.S. at 201). In proving that a defendant official has violated a clearly established constitutional right, mere generalizations about the right allegedly violated are not enough. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and alteration omitted). In the end, the lodestar for whether a right was clearly established is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Cases from the United States Supreme Court, the Fourth Circuit, or the highest court of the state in which the incident took place should be consulted in deciding whether a right was clearly established at the time the incident took place. *Lefemine v. Wideman*, 672 F.3d 292, 299-300 (4th Cir. 2012). However, the "nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity [because] 'qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations.'" *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (quoting *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (Michael, J. concurring)); *see also Hope*, 536 U.S. at 741) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). A determination that a right is clearly established may be based on controlling authority in the jurisdiction in question or on a "consensus of cases

of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Waterman*, 393 F.3d at 476 (quoting *Wilson v. Layne*, 526 U.S. at 617).

The defense of qualified immunity covers reasonable errors so that officials are not compelled to always err on the side of caution for fear of being sued. *See Davis v. Scherer*, 468 U.S. 183, 196 (1984). Animated by the desire to avoid inhibiting officials in their exercise of discretionary authority, qualified immunity has been extended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). The concerns behind qualified immunity are especially significant in the context of law enforcement, which often requires quick and decisive action in the face of unpredictable and volatile circumstances. *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994). Thus, qualified immunity "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quotation omitted).

Here, the law is clearly established that, at a minimum, after the vehicle passed the officers and no one was in danger, any further shots constituted excessive force in violation of Plaintiff's Fourth Amendment rights. In *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005), decided over a decade ago, the Fourth Circuit resolved unquestionably that any officer may not legally employ deadly force in response to a threat of serious harm moments after he should have known that the threat had been eliminated. Specifically, the Fourth Circuit held that continued firing of shots at a fleeing vehicle while it was moving away from the officers and no longer posed a threat constitutes excessive force. *Waterman*, 393 F.3d at 481-82 ((citing *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999); *Dickerson v. McClellan*, 101 F.3d 1151, 1162 n.9 (6th Cir. 1996); and *Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993)); *accord Brockington v.*

*Boykins*, 637 F.3d 503, 508 (4th Cir. 2011) (applying *Waterman* to find the continued use of

lethal force unjustified where the unarmed suspect had been subdued by initial gunshots and was

immobilized). As such, *Waterman* is "controlling authority in the jurisdiction in question," such

that "a reasonable officer could not have believed his actions were lawful." *Id.* at 476 (quoting

*Wilson v. Layne,* 526 U.S. at 617).

With regard to the initial shots fired, and when viewed most favorably to the Plaintiff, a

reasonable fact finder could determine at trial that the Officers' initial shots constituted excessive

force. If Plaintiff, Barksdale and Battle are believed, the Officers were never near the Honda,

Barksdale never drove the Honda in Defendants' direction, and Allen was not hit by the vehicle

or was placed at any risk of danger. *Cf. Waterman*, 393 F.3d at 480 (defendant officers entitled to

qualified immunity where a vehicle was accelerating in the officers' general direction and,

according to the best information available to them, the suspect had used his vehicle as a weapon

against another officer just minutes before). Further under *Garner*, the Supreme Court held that

an officer's use of deadly force is warranted *only* where fleeing suspects pose a risk of death or

serious bodily injury to them or others. Thus, the use of such force here, where Barksdale and

Battle's testimony is credited over the Defendants, renders the defense of qualified immunity

unavailable to Allen and Powell. *Henry v. Purnell*, 652 F.3d at 532 ("Where the suspect poses no

immediate threat to the officer and no threat to others, the harm resulting from failing to

apprehend him does not justify the use of deadly force to do so.") (quoting *Tennessee v. Garner*,

471 U.S. 1, 11 (1985)); *Brockington*, 637 F.3d at 508; *Gray-Hopkins v. Prince George's Cty.*,

Maryland, 309 F.3d 224, 231 (4th Cir. 2002); *Clem v. Corbeau*, 284 F.3d 543, 554 (4th Cir.

2002) (collecting cases); *see also Henry v. Purnell*, 652 F.3d at 531 (deputy sheriff who shot

fleeing suspected misdemeanant with gun, rather than taser, was not entitled to qualified

immunity). *Cf. Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013) ("[T]he mere possession of a deadly weapon by a suspect is not enough to permit the use of deadly force . . . Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon.") (citation omitted); *Waterman*, 393 F.3d at 482 (qualified immunity unavailable for second set of gunshots where the vehicle passed police officers and reasonable factfinder could find the threat of grave danger ended).

### B.     Malicious Prosecution (Counts I and V)

Plaintiff also raises malicious prosecution claims under 42 U.S.C. § 1983, and Articles 24 and 26 of Maryland Declaration of Rights against all Defendants in their official and individual capacities. Specifically, the Plaintiff claims that the "Defendants lacked probable cause to charge Plaintiff with various degrees of Assault [sic]." ECF No. 1 at 4. The Defendants move for summary judgment as to both of Plaintiff's malicious prosecution claims, arguing that they had not supplied any information that caused Plaintiff to be charged with assault, and instead the commissioner's independent decision to level assault charges on Jones constituted an independent intervening act. In the alternative, the Defendants assert that qualified immunity and government immunity applies to each respective malicious prosecution claim.

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citations omitted). To establish the tort of malicious prosecution, a plaintiff must show that the defendant caused a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and criminal proceedings terminated in plaintiff's favor. *Bretemps v. Town of Brentwood, Md.*, 9 F. Supp. 3d 571, 581 (D. Md. 2014) (quoting *Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012)). Probable cause exists

where "the facts and circumstances within the [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

The Defendants have not contested that the Plaintiff was seized pursuant to legal process or that the criminal proceedings terminated in his favor. Thus, this Court will turn to the element of causation with regards to the assault charges.

Successful constitutional tort claims "require a demonstration of both but-for and proximate causation." *Evans*, 703 F.3d at 647 (citations omitted). As with common law torts, the "subsequent acts of independent decision-makers (*e.g.*, prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *Id.* While intervening acts of other participants in the criminal justice system, such as an exercise of prosecutorial discretion, generally insulate a police officer from liability, police officers may remain the cause of the unreasonable seizure "when they have lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor, or unduly pressured the prosecutor to seek the indictment." *Id.* at 647-48 (citations omitted); *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014).

"False statements alone do not, however, run afoul of the Fourth Amendment." *Massey*, 759 F.3d at 357. To contravene the Constitution, "the false statements or omissions must be 'material,' that is, 'necessary to the finding of probable cause.'" *Miller*, 475 F.3d at 628 (alteration omitted) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

Defendants maintain that they escape liability for the alleged illegal seizures because they did not *cause* the criminal proceedings against the Plaintiff. Plaintiff, on the other hand, contends that the "information provided by Allen and Powell to Jensen and Bunce represented the singular basis for the charges ultimately brought against Plaintiff." ECF No. 42 at 14. The Court agrees with Defendants.

The Application for a Statement of Charges, incorporating Powell and Allen's version of events, clearly identifies Barksdale and not the Plaintiff as the driver of the vehicle.[3] Even if Powell and Allen misled the prosecution, they did so only with regards to the driver Barksdale and his alleged assault of the officers. Neither of the Defendants ever allege that Plaintiff Jones assaulted the officers. Thus their statements were not material to a finding of probable cause regarding Jones. *See Humbert v. O'Malley*, No. CIV. WDQ-11-0440, 2014 WL 1266673, at *11 (D. Md. Mar. 25, 2014) (dismissing claims against two officers when plaintiff failed to show they "participated in any violation of his constitutional rights related to the probable cause determination"); *accord Massey*, 759 F.3d at 357 (finding the alleged fabricated statements of the officers were not necessary to a finding of probable cause).

Rather, the undisputed facts demonstrate that Commissioner unilaterally added the assault charges against the Plaintiff. *See Evans*, 703 F.3d at 648 (citing *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.")). What is more, no evidence suggests that the Commissioner was influenced

---

[3] Plaintiff does not directly allege and it is unclear whether Bunce or the state's attorney used Jensen's Incident Report to draft the narrative in the Application for Statement of Charges or the Statement of Charges). *See* ECF No. 42 at 8, 13–14; ECF No. 42-7 at 58. Regardless, Plaintiff also confusingly undercuts his own rationale regarding causation as to Defendant Powell and Allen's roles in crafting the incident report, highlighting that "[w]hile Jensen testified that he spoke to both officers after the incident there is no official report or writing documenting this conversation." ECF No. 42 at 8 n.1.

at all by Defendants or anyone acting at their behest. To the contrary, once Bunce saw the Statement of Charges issued by the Commissioner, he urged the state's attorney to drop the assault charges against Jones. Accordingly, even if the Defendants' recitations of events were false, the falsities are not the proximate cause of the additional assault charges brought against the Plaintiff. Thus, taking the facts in the light most favorable to the non-moving party, Plaintiff cannot sustain a claim of malicious prosecution.

Articles 24 and 26 of the Maryland Declaration of Rights "are read *in pari material* with the Fourteenth and Fourth Amendments, to the United States Constitution, respectively." *Warren v. Montgomery Cty.*, No. CIV. PJM 09-2510, 2012 WL 3779165, at *5 (D. Md. Aug. 30, 2012) (citing *Davis v. DiPino*, 121 Md. App. 28, 708 A.2d 357, 367 (Md. Ct. Spec. App. 1998)). Thus, the Court's findings with respect to the § 1983 malicious prosecution claims will also apply to the claims under Articles 24 and 26 of the Maryland Declaration of Rights. Because both malicious prosecution claims cannot be sustained, this Court need not address the issue of qualified and governmental immunity.

### C.      State Law Tort Claims (Counts III and IV)

Lastly, this Court turns to Defendant's assertion of official immunity as to the state-law claims of battery and wanton negligence. The Maryland Code, Cts. & Jud. Proc. § 5–507(a)(1) (2014) provides that a municipal official, "while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority" is immune from civil liability that arises from those actions.

Here, the Plaintiff's version of events, and as corroborated by physical evidence, reflects the Defendants firing into the back of the vehicle as it was driving away from the officers. Indeed, Powell unequivocally testified that when he fired, he was "directly behind the car," and

shot at through the back window as it was leaving the scene. ECF No. 50-2 at 21, 23. Further, if

Powell's testimony is believed that he fired at the vehicle in Because a reasonable jury may find

that Officers Allen and Powell acted maliciously or with wanton negligence—they are not

entitled to public official immunity. *Town of Port Deposit v. Petetit*, 113 Md. App. 401, 414, 688

A.2d 54, 61 (1997); *Cooper v. Rodriguez*, 443 Md. 680, 708–09 (2015) ("Whether or not gross

negligence exists necessarily depends on the facts and circumstances in each case, and is usually

a question for the jury and is a question of law only when reasonable people could not differ as

to the rational conclusion to be reached.") (quoting *Romanesk v. Rose*, 248 Md. 420, 423 (1968)

(citations omitted)). The reasoning that led this Court to deny qualified immunity as to Plaintiff's

§ 1983 claim of excessive force lead this Court to deny official immunity as to the state law

claims.

## III.    CONCLUSION

In sum, the evidence pointing to material disputed facts regarding the reasonableness of

Officers Allen and Powell's actions preclude summary judgment as to all claims of excessive

force, battery and wanton negligence. However, the facts even when viewed most favorably to

Plaintiff, demonstrate that Defendants are not liable for malicious prosecution because they did

not *cause* the criminal proceedings against the Plaintiff. Defendants' joint motion, therefore is

denied in part and granted in part. A separate order will follow.


9/15/2016                                                     /S/
Date                                          Paula Xinis
                                              United States District Judge


25