IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARREN KEVIN JONES,

 Plaintiff,

v.               Civil Action No. PX-15-1173

GARY ALLEN *et al.*,

 Defendants.

******

**MEMORANDUM OPINION**

Pending are Defendants' motion for a new trial or remittitur (ECF No. 137) and Plaintiff's motion for attorneys' fees (ECF No. 133). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendants' Motion is DENIED and Plaintiff's Motion is GRANTED in part.

**I. BACKGROUND**

Plaintiff Darren Kevin Jones ("Plaintiff" or "Jones") filed his 42 U.S.C. § 1983 action and related Maryland state law claims against Prince George's County police officers Joseph Bunce, Gregory Powell, and Gary Allen, claiming that on April 5, 2014, he was unjustifiably shot by Officers Allen and Powell. ECF No. 1. On September 15, 2016, the Court granted summary judgment in the Defendants' favor, dismissing Plaintiff's claims of malicious prosecution and all claims against Defendant Bunce. ECF Nos. 53, 54. The Court denied Defendants' motion for summary judgment as to Plaintiff's claims of excessive force, battery and wanton negligence. *See* ECF Nos. 53, 54. Trial commenced on October 25, 2016. During

1

trial, Plaintiff dismissed all remaining Maryland state law claims, leaving only the 42 U.S.C. § 1983 claim of excessive force for the jury's deliberation.

According to the evidence presented at trial, on April 5, 2014, Plaintiff accompanied Carlos Barksdale ("Barksdale") to a residence located at 8610 Temple Hills Drive in Clinton, Maryland for the purpose of retrieving an all-terrain vehicle which Plaintiff intended to borrow. The residence was that of Andrea Battle ("Battle"), the Barksdale's estranged girlfriend and the mother of Barksdale's child. Barksdale drove to Battle's home in a black Honda with Plaintiff in the front passenger seat. When Battle noticed that Barksdale was on her property, she telephoned the police.

Defendants Allen and Powell responded to this service call for a purported burglary at the residence. After parking across the street from the residence, Defendants walked towards the house and saw Plaintiff moving towards the Honda that Barksdale had parked in the driveway. Allen and Powell commanded Plaintiff to stop. Plaintiff did not heed the Officers' commands and instead jumped into the front passenger seat as Barksdale drove out of the driveway and down the street.

Defendants testified that Barksdale drove the vehicle toward the officers at least initially, and that Officer Allen had been clipped by the car as it drove away. The undisputed physical evidence revealed that the Officers fired on the vehicle, and at least some of the bullets entered the car as it was moving away from Defendants. Plaintiff was shot four times, with one bullet entering through his back, and others hitting his hand and the side of his leg.

Defendants returned to their police vehicle and chased Barksdale's car, but eventually lost sight of it. Barksdale dropped off Plaintiff at a nearby bank parking lot where Plaintiff's friends were waiting for him. Barksdale then drove away and was not apprehended by law

2

enforcement at that time. Plaintiff testified that as he exited the vehicle at the bank, he had serious trouble breathing, was unable to walk, and believed that he was dying. Plaintiff's friends drove him to the hospital where he was treated and placed in police custody.

At the hospital, Plaintiff was immediately stabilized, then had to undergo exploratory surgery to his abdomen as well as reconstructive surgery to his hand. Doctors Christine Trankiem and Derek Masden both testified at length regarding the nature and extent of Plaintiff's injuries, the period of recovery, and the physical damage that Plaintiff endured. In addition, the jury observed Plaintiff's permanent scars to his hand, abdomen, flank and leg.

Plaintiff also testified to his pain and suffering as a result of the incident and during his recovery, which included battling insomnia, nightmares, and depression. Plaintiff's girlfriend testified to caring for Plaintiff following his physical injuries and corroborated Plaintiff's mental anguish stemming from the shooting.

The jury returned a verdict finding both Defendants liable for using excessive force against Plaintiff in violation of 42 U.S.C. § 1983. *See* Jury Verdict, ECF No. 129. The jury awarded $601,234.18 in compensatory damages and no punitive damages. *Id.* Judgment was entered on November 16, 2016 against Defendants Allen and Powell, jointly and severally, in the amount of $601,234.18 pursuant to Federal Rule of Procedure 54(b). ECF No. 132.

Defendants now move the Court for a new trial and, alternatively, for remittitur of the jury award pursuant to Rule 59 of the Federal Rules of Civil Procedure. Plaintiff moves for attorneys' fees pursuant to 42 U.S.C. § 1988. The Court will address the motions in turn.

## II.     ANALYSIS

### A. Defendant's Motion for a New Trial

Following a jury trial, Federal Rule of Civil Procedure 59(a) allows the court to grant a new trial on all or some issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Because every litigant is entitled to one fair trial, not two, the decision of whether to grant or deny a motion for a new trial lies within the discretion of the district court." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 599 (D. Md. 2012) (internal citations and quotation marks omitted). *See also King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010). The court must exercise its discretion to grant a new trial only if the verdict "(1) is against the clear weight of the evidence, (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Wallace*, 861 F. Supp. 2d at 599 (citing *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001)). Such a motion should be granted only when it "is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Pathways Psychosocial v. Town of Leonardtown, Md.*, 223 F. Supp. 2d 699, 706 (D. Md. 2002).

#### 1. The Jury Instruction on Seizure

Defendants first challenge the Court's jury instruction on seizure. At the outset, the Court notes that Defendants did not object to the instruction they now challenge. *See* Oct. 28, 2016 Charging Conference Tr., ECF No. 152 at 28–32; Oct. 31, 2016 Charging Conference Tr., ECF No. 153 at 4–10. Preservation of an objection requires the party to state "distinctly the matter objected to and the grounds for the objection" on the record. Fed. R. Civ. P. 51(c). *Accord Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir. 1991) ("[T]o preserve an objection

to the instructions to the jury, a party is required to point out specifically the nature of the objection."). While "a formal exception to a ruling or order is unnecessary . . . [and] a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection," Fed. R. Civ. P. 46, the party still must make the district court "fully aware" of the party's position. *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 453 (4th Cir. 1990). Failure to object to issues relating to jury instructions results in a waiver of those objections for the purposes of a motion for new trial and appeal. *Id.* at 453–54; *cf. Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 154 n.6 (4th Cir. 2012), *as amended* (May 9, 2012) (finding appellant "waived its challenge to any jury instructions . . . by failing to preserve the issue for appellate review by neglecting to make timely and sufficient objections to the court's charge below.").

Defendants now claim that the jury instruction on seizure was erroneous. Notably, throughout the trial, Plaintiff argued that the issue of seizure was a question of law for the Court to decide rather than the jury, *see e.g.*, Oct. 31, 2016 Charging Conference Tr., ECF No. 153 at 10. Consistent with the Court's views, Defendants contend that whether Plaintiff was seized, thus triggering his Fourth Amendment rights, was a question of fact for jury determination. *See e.g.*, Trial Tr., ECF No. 150 at 79–80; ECF No. 152 at 24–27. The Court accordingly granted Defendants' request for such an instruction. *See* ECF No. Trial Tr., ECF No. 150 at 79–80; Oct. 31, 2016 Charging Conference Tr., ECF No. 153 at 11.[1]

---

[1] The Court also denied Defendants' cross-motion for judgment as a matter of law that the Plaintiff was not seized. Trial Tr., ECF No. 150 at 81. In denying both Plaintiff's and Defendants' motions on the issue, the Court reasoned:

> Unless there is a judgment as a matter of law, which this is not. There's been factual evidence generated on both sides, both offensively and defensively, on this issue. I am loathe to take away a question for the jury, although, as we've discussed before, we've broken it out on the

5

The Court retains broad discretion in framing jury instructions. *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994). Instructions that correctly state the law and adequately cover the operative facts presented by the parties are sufficient. *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1164 (4th Cir. 1986). When instructions, "construed as a whole, and in light of the whole record . . . adequately inform[ ] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987).

Here, the question of seizure had been hotly contested during the trial. Accordingly, the Court provided the following instruction on seizure:

> A person is "seized" under the law when police officers, by means of physical force or a show of authority, restrain that person's freedom of movement. Now in this case you have heard evidence that the officers were trying to stop the vehicle in which Mr. Jones was a passenger by stopping the driver, Mr. Barksdale.
>
> A seizure occurs when governmental termination of freedom is through means intentionally applied. I instruct you that under the law, when an officer intentionally stops a vehicle by stopping the driver, the passenger as well as driver are "seized" under the Fourth Amendment.

---

> verdict form so you can track carefully where the jury comes down in this regard . . . .
>
> And then the vehicle wasn't stopped, which is, under the law, an attempted seizure, not an actual seizure, unless the vehicle is stopped. So the jury still has at least a factual question to decide, which is was Mr. Jones seized. I think it's important because the standard is restraint of freedom through means intentionally applied, through a show of force or show of authority, the means intentionally applied. I think it's important that you've elicited the testimony they attempted to stop the vehicle, because then you can argue that all this force was intended to stop the vehicle and, therefore, Mr. Jones was seized, because he was, indeed, the target. But there's a factual dispute there I can't take away from the jury.

Trial Tr., ECF No. 150 at 79–80.

> So if you find that the officers' use of force or show of authority in trying to stop the vehicle also restrained Mr. Jones' freedom of movement, then Mr. Jones was "seized" under the law. You may use evidence, if you so choose, that the Plaintiff was shot as evidence that he was seized. On the other hand, if you find that the officers' use of force or show of authority did not restrain Mr. Jones freedom of movement, then he was not "seized" under the law. In determining whether or not Mr. Jones was seized, you may consider all of the facts and circumstances presented to you.

Jury Instructions, ECF No. 117 at 32.

Defendants argue the Court committed reversible error by instructing the jury that "Plaintiff was seized if the 'officers' use of force or show of authority in trying to stop the vehicle also restrained [Plaintiff's] freedom of movement." *See* Def.'s Memorandum, ECF No. 137 at 5 (quoting Jury Instructions, ECF No. 117 at 32). Officer detention of a vehicle renders all persons in the vehicle seized. *United States v. Soriano-Jarquin*, 492 F.3d 495, 499–500 (4th Cir. 2007) ("[A] passenger in a vehicle stopped by the police is seized by the stop within the meaning of the Fourth Amendment.") (citing *Brendlin v. California*, 551 U.S. 249 (2007));[2] 1 W. Ringel, *Searches & Seizures, Arrests and Confessions* § 11:20 (2d ed. 2016) ("[A] law enforcement officer's stop of an automobile results in a seizure of both the driver and the passenger"). Here, however, Defendants clearly attempted to stop and thus seize the vehicle, but genuine issues of

---

[2] In *Brendlin v. California*, 551 U.S. 249 (2007), the Supreme Court addressed the Fourth Amendment rights of the passenger in a car and found no "distinction between driver and passenger that would affect the Fourth Amendment analysis." The *Brendlin* Court defined a seizure as "when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied. Thus, an unintended person may be the object of the detention, so long as the detention is willful and not merely the consequence of an unknowing act." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations, emphasis, and citations omitted). Indeed, *Brendlin* confirms that, contrary to Defendants' argument, the central proposition of *California v. Hodari D.*, 499 U.S. 621 (1991), requiring actual submission to a show of authority, has limited relevance here. *Cf. California v. Hodari D.*, 499 U.S. 621, 626 ("An arrest requires *either* physical force (as described above [as the laying on of hands or application of physical force to retrain movement]) *or*, where that is absent, *submission* to the assertion of authority.") (emphasis in original).

fact remained as to whether Plaintiff was seized in light of Barksdale successfully driving away. Because the instruction on seizure was complete, fair, and balanced to both sides in the context of the evidence generated at trial, the Court denies Defendants' motion.

In essence, Defendants attempt to re-litigate their argument at summary judgment and again mistakenly rely on *Schultz v. Braga*, 455 F.3d 470 (4th Cir. 2006), which this Court has already held distinguishable from this case. *See* Memorandum Opinion, ECF No. 53 at 6. Defendants intended to stop the vehicle—and thus both occupants of the car—using lethal force. *See Schultz*, 455 F.3d at 482 (seizure occurs where plaintiff is "a desired target *and* each was in fact stopped or seized by the bullet intentionally fired by the officer") (quoting favorably *Vaughan. v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003)). The instructions, as given, adequately informed the jury of the controlling legal principles and allowed Defendants to argue, as they did, that Defendants did not intend to shoot Plaintiff but simply to stop the driver, Barksdale. Accordingly, the Court's instruction on seizure was warranted and proper.

2. **The Verdict Form**

Defendants also argue that Court erred in not providing separate questions on the verdict form regarding whether each officer intended to seize Plaintiff by firing on the vehicle. *See* Def.'s Memorandum, ECF No. 137 at 5. Specifically, Defendants contend that because they intended to stop Barksdale as the driver (and thus stop the vehicle), the jury should have been queried about whether each officer separately intended to seize Plaintiff. *See* ECF No. 153 at 23.

When creating a verdict form, "[i]t is settled in this jurisdiction that the formulation of issues and the form of interrogatories is committed to the sound discretion of the trial judge." *Horne v. Owens–Corning Fiberglas Corp.*, 4 F.3d 276, 284 (4th Cir. 1993) (quoting *Klein v. Sears Roebuck & Co.*, 773 F.2d 1421, 1426–27 (4th Cir. 1985)). When reviewing the

verdict form for error post-trial, the Court considers "several factors, including whether the interrogatories adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the ultimate questions of fact were clearly submitted to the jury." *Id.*

The Court submitted a special verdict form that required the jury first to determine whether Plaintiff was seized. If the jury unanimously answered "yes" to this preliminary question, they were instructed to proceed to determining the § 1983 claim. The specific interrogatory on seizure read:

> Do you find by a preponderance of the evidence the Defendants' use of force or show of authority seized Plaintiff Darren Jones as I have defined seizure for you?

*See* Verdict Form, ECF No. 129.

As such, the special interrogatory was a correct application of the law to the facts generated at trial and consistent with its jury instruction on seizure. By contrast, Defendants' requested special interrogatories would have misled the jury into believing Plaintiff could have been "seized" by one officer and "not seized" by the other—an impossibility considering that both officers approached the vehicle, drew their weapons of identical caliber using identical ammunition, and fired simultaneously. No facts could allow any rational juror to determine that one officer seized Plaintiff when the other did not. What is more, the jury was properly and thoroughly instructed on the question of officer intent, *see* Jury Instructions, ECF No. 117 at 29, 30–33, which Defendants do not challenge. Accordingly, the special interrogatory flowed logically from the jury instruction on seizure and was therefore proper.

### 3. Remittitur

Defendants next argue that they are entitled to a remittitur of the jury's $400,000 non-economic damage award because it is excessive. *See* Defs.' Memorandum, ECF No. 137 at 7. The Court disagrees.

"[A] remittitur, used in connection with Federal Rule of Civil Procedure 59(a), is the established method by which a trial judge can review a jury award for excessiveness." *Atlas Food Sys. & Svcs., Inc. v. Crane Nat'l Vendors*, 99 F.3d 587, 593 (4th Cir. 1996). A jury's damage award may be deemed excessive when it is either "against the weight of the evidence" or "based upon evidence which is false." *Id.* at 594 (citing *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir. 1987)). *Accord Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998).

Defendants do not argue that the evidence presented was at all false. Nor is the award against the great weight of the evidence. Considering the severity and permanency of Plaintiff's injuries from being shot in his arm, leg, and abdomen, and the attendant physical and mental pain and suffering, $400,000 in non-economic damages is a reasonable award. It is roughly two-times the medical expenses generated and is consistent with the evidence presented by Plaintiff's treating physicians and loved ones who corroborated Plaintiff's own testimony about his pain and suffering. The Defendants, therefore, have not provided an adequate factual basis to justify remittitur.

Defendants reliance on *Robles v. Prince George's County*, 302 F.3d 262 (4th Cir. 2002) (compensatory and punitive damages reduced from $647,000 to $240,000 for an unlawful 10-minute detention based on "brevity," "absence of any physical abuse," and no claim for lost wages or medical treatment) and *Francis v. Johnson*, 219 Md. App. 531 (2014) (reduction where no claim for medical bills or evidence of psychological treatment) does not undermine the

Court's decision here. Unlike in *Robles* and *Francis*, Plaintiff sustained severe physical injury warranting surgery to his hand and stomach. He subsequently endured physical rehabilitation, attended psychological counseling, and is permanently disfigured. *Cf. McCollum v. McDaniel*, 136 F. Supp. 2d. 472 (D. Md. 2001) ($3.5 million compensatory damage award, reduced to $1.25 million where Plaintiff suffered damage to his hand and loss of eye from police beating). Because the jury award is in line with Plaintiff's injuries, it will remain undisturbed.

### B. Plaintiff's Motion for Attorneys' Fees

Title 42 U.S.C. § 1988 authorizes district courts to award reasonable attorneys' fees to prevailing parties in cases brought under § 1983. *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of section [ ] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). The Supreme Court has established the "lodestar" method for determining a reasonable fee. The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services," the lodestar method generates a presumptively reasonable fee. *Hensley*, 461 U.S. at 433; *see also Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010) ("[T]here is a strong presumption that the lodestar figure is reasonable.").

Twelve factors first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) guide the determination of what constitutes a reasonable fee. The factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19. *Accord Robinson*, 560 F.3d at 243–44; *Hensley*, 461 U.S. at 434 ("[W]e have instructed that a district court's discretion should be guided by [these] twelve factors."). Only those *Johnson* factors relevant to the circumstances of the particular case need to be considered. *See EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). Chief among these considerations is "the degree of the plaintiff's overall success." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quotation marks and citation omitted). Thus, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.

In the instant motion, Plaintiff requests $408,868.50 in attorneys' fees. Plaintiff seeks reimbursement for 475.7 hours billed by co-lead counsel Stephen Norman at an hourly rate of $450; 113.8 hours billed by co-lead counsel Andrew Jezic at an hourly rate of $450; 49.6 hours billed by counsel Jonathan Carroll at an hourly rate of $350; 9.9 hours billed by counsel Daniel Herr at an hourly rate of $400; 520.3 hours billed by trial consultant Erwin Jansen at an hourly rate of $200; 109.1 hours billed by paralegals at an hourly rate of $145; and 17.4 hours billed by legal assistants at an hourly rate of $100. *See* ECF No. 133 at 2. In support of his request, Plaintiff submits detailed billing statements. *See* ECF No. 133-3.

As an initial matter, the Court notes that counsels' hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). For attorneys with twenty years

or more experience, the Court sets a presumptively reasonable hourly rate is between $300 and $475. *See* Appendix B to the Local Rules (D. Md. July 2016). Similarly, Appendix B provides that the maximum rate for paralegal services is $150. By producing counsel's "own affidavit[ ]," as well as the declaration of multiple local lawyers familiar with the fees ordinarily charged in similar matters, Plaintiff has met his burden to produce "satisfactory specific evidence" of relevant market rates in the District of Maryland. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *see also* Local Rule 109.2(b).[3]

The lodestar analysis also requires, however, that the Court "exclude from [its] initial fee calculation" any excessive, redundant, or otherwise "not reasonably expended" hours. *Hensley*, 461 U.S. at 434. Plaintiff requests reimbursement for 701.5 hours of counsel, paralegal, and trial consultant time. The Court finds these hours excessive although not to the extent Defendants contend.

It bears noting that this case presented thorny legal issues and extensive expert testimony that led to robust pretrial and trial presentations. That said, Plaintiff elected to have two attorneys present for depositions and attend to other matters where only one was warranted. *See Hensley*, 461 U.S. at 434; Appendix B, 2b of the Local Rules (D. Md. July 2016) (provides compensation for one attorney attending a deposition). Plaintiff also has billed "purely clerical or secretarial tasks" at a paralegal rate, which is prohibited. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). Accordingly, to adjust for the above, a reduction in the fee award is appropriate.

---

[3] Defendant does not dispute the requested rate for Mr. Jensen's work, and the Court is persuaded by *Sulkowska v. City of New York*, 170 F. Supp. 2d 359 (S.D.N.Y. 2001) and *Duke v. Cty. of Nassau*, No. 97-CV-1495 (JS), 2003 WL 23315463 (E.D.N.Y. Apr. 14, 2003) that his work as a non-barred trial consultant is at a reasonable rate considering his years of experience and his crucial role in the case.

Finally, with regard to the remaining applicable *Johnson* factors, Plaintiff's counsel certainly were successful, and counsel for Plaintiff represents that "[t]he final settlement offer made by Defendants was substantially less than the judgment obtained at trial." ECF No. 133 at 11. *See Thomas v. Flanagan*, No. WDQ-13-0685, 2016 WL 258633, at *6 (D. Md. Jan. 20, 2016) (citing *Thomas v. Nat'l Football League Players Ass'n*, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001) (district court "has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so")). The affidavits from local and Delaware counsel also attest to counsel's solid reputation and abilities in this practice area. *See* ECF No. ECF Nos. 135, 139, 141.

Under the applicable *Johnson* factors, therefore, Plaintiff's counsel are entitled to the lion's share of the claimed fee. A modest reduction of 10 percent (10%) is appropriate to adjust for the instances of over-billing discussed above and otherwise achieve reasonable fee. Plaintiff's counsel is therefore awarded $367,981.65 in fees and $55,064.18 in expenses,[4] for a total recovery of $423,045.83.

### III. CONCLUSION

For the foregoing reasons, Defendants motion for a new trial or remittitur is denied and Plaintiff's motion for attorney's fees and costs for a total recovery of $423,045.83. An order will follow.

---

[4] A prevailing plaintiff in a § 1983 action is also entitled to recover the costs reasonably incurred in litigating his claims. *See Trimper v. City of Norfolk*, 58 F.3d 68, 75 (4th Cir. 1995) ("[Section] 1988 contemplates reimbursement not only for attorney's fees but also litigation expenses such as secretarial costs, copying, telephone costs and necessary travel."); *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986) ("[Section] 1988 is intended to encourage [civil rights plaintiffs] to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers."). Defendants do not contest Plaintiff's claimed expenses, and the Court's review of the same reflects that they are appropriate in this case.

5/23/2017  
Date

/S/  
Paula Xinis  
United States District Judge